**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>MANUEL CHAVEZ ALTAMIRANO,<br><br>Debtor. | Chapter 7<br><br>Case No. 4:20-bk-11836-BMW<br><br>**MEMORANDUM DECISION REGARDING DEBTOR'S MOTION FOR SANCTIONS (DE 24)** |

This matter is before the Court pursuant to the *Motion for Sanctions for Violation of the Automatic Stay* (the "Motion for Sanctions") (DE 24)[1] filed by Manuel Chavez Altamirano (the "Debtor") on January 22, 2021; the *Response to Motion for Sanctions for Violation of the Automatic Stay* (the "Response") (DE 45) filed by Arizona Fleet IM, LLC ("Arizona Fleet") on August 17, 2021; the *Reply to AZ Fleet's Response to Motion for Sanctions for Violation of the Automatic Stay* (the "Reply") (DE 46) filed by the Debtor on August 24, 2021; and all filings related thereto. The Motion for Sanctions requests that the Court grant monetary sanctions against Arizona Fleet pursuant to § 362(k) for the post-petition repossession and retention of the Debtor's vehicle by Arizona Fleet.

After a series of preliminary hearings, the parties filed their *Joint Pre-Trial Statement* (DE 56), and on November 17, 2021, the Court held an evidentiary hearing, at which time the parties

---

[1] Citations to filings on the docket in this bankruptcy case are indicated by "DE." Citations to exhibits admitted into evidence are indicated by "TE." If an exhibit admitted into evidence is also a filing on the docket, the Court will refer to the document using its exhibit number.

presented evidence, and testimony was provided by the Debtor; the Debtor's attorney, Wayne Mortensen ("Mr. Mortensen") of Mortensen Law Offices, PLLC ("Mortensen Law"); Susan Krause ("Ms. Krause") and Michelle Flynn ("Ms. Flynn"), paralegals at Mortensen Law; and Ronald Vern Bishop ("Mr. Ronald V. Bishop") and Ronald Lee Bishop ("Mr. Ronald L. Bishop," and collectively with Mr. Ronald V. Bishop, the "Bishops"), as representatives of Arizona Fleet.[2]

On December 3, 2021, Mr. Mortensen filed affidavits of attorneys' fees, and on January 21, 2022, the parties submitted post-trial briefs. (DE 65, 66, 83, 84). The Court then took this matter under advisement.

Based on the pleadings, arguments of counsel, testimony offered, exhibits admitted into evidence, and entire record before the Court, the Court now issues its decision.

### I. Jurisdiction

This is a core proceeding over which this Court has jurisdiction and authority to enter a final judgment pursuant to 28 U.S.C. §§ 1334 and 157. No party disputes that this Court has jurisdiction and authority to enter a final judgment.

The following constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 9014(c) and 7052.

### II. Background, Findings of Fact, and Procedural Posture

Arizona Fleet is engaged in the automobile finance industry. The Bishops confirmed during their testimony that they have been involved in bankruptcy cases as representatives of Arizona Fleet. (*See* 11/17/2021 Trial Tr. 87:1-5; TE D at ¶ 4; *see also* TE 7; TE 8; 11/17/2021 Trial Tr. 7:22-8:20, 9:2-18). Mr. Ronald L. Bishop further confirmed that he has a general understanding of the automatic stay. (11/17/2021 Trial Tr. 87:1-5).

On July 14, 2020, the Debtor entered into a retail installment contract with Arizona Fleet for the purchase of a 2011 Kia Sorento (the "Vehicle"). (TE D at ¶ 2).

On October 27, 2020, the Debtor, through counsel, filed a voluntary petition for relief

---

[2] The Bishops testified that they are owners of Arizona Fleet. (11/17/2021 Trial Tr. 85:19-21; TE D at ¶ 1).

under Chapter 7 of the Bankruptcy Code. (DE 1). Attached to the bankruptcy petition is the Debtor's original master mailing list, which does not include Arizona Fleet. (*See* DE 1 at 8-10).

On October 28, 2020, the Bankruptcy Court Clerk's Office (the "Clerk's Office") issued Official Form 309A, the *Notice of Chapter 7 Bankruptcy Case – No Proof of Claim Deadline* (the "Notice of Bankruptcy Case") (DE 5), which was sent to various creditors and parties in interest by the Bankruptcy Noticing Center (the "BNC"). Because Arizona Fleet was not listed on the Debtor's original master mailing list, the Notice of Bankruptcy Case was not sent to Arizona Fleet by the BNC. (DE 6; DE 56 at § I.2 & II).

On November 10, 2020, the Debtor filed his schedules and statements. (DE 11; DE 12; DE 13). On Schedules A/B and C, the Debtor listed the Vehicle, which he valued at $4,000, and claimed an exemption in the Vehicle. (DE 11 at 3, 9; *see also* DE 56 at § I.1 & II). Further, on Schedule D, the Debtor listed Arizona Fleet as a party to be notified about the bankruptcy case with respect to debt secured by the Vehicle. (DE 11 at 13). On his Statement of Intention, the Debtor indicated his intent to retain the Vehicle and continue to make the monthly installment payments under the purchase contract. (DE 12 at 1).

In accordance with Schedule D, Arizona Fleet was added to the master mailing list on November 10, 2020.

On December 14, 2020, the Clerk's Office issued a *Notice Fixing Last Date to File Claims* (the "Notice Setting Claims Bar Date") (DE 21), and on December 16, 2020, the BNC sent the Notice Setting Claims Bar Date by first class mail to "AZ FLEET, 3810 S. DODGE BLVD., TUCSON, AZ 85713-5476[.]" (TE 1 at 1). No party has disputed that this is the correct mailing address for Arizona Fleet.[3] The Bishops, however, testified that they did not personally receive the Notice Setting Claims Bar Date. (11/17/2021 Trial Tr. 89:6-9; TE D at ¶ 4). Mr. Ronald V. Bishop explained that although there is a designated employee who handles receipt of Arizona Fleet's mail, other employees of Arizona Fleet sometimes take receipt of, open, and, on occasion, throw away mail delivered to Arizona Fleet. (11/17/2021 Trial Tr. 81:12-23).

---

[3] The *Certificate of Notice* (TE 1) reflects that although an incorrect zip code was initially remitted to the BNC, Arizona Fleet's mailing address was thereafter "corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP."

On or about December 18, 2020, the Debtor also sent a text message to Connie Martinez ("Ms. Martinez"), who was the Debtor's contact at, and an employee of, Arizona Fleet, informing her of his bankruptcy case. (TE 2; 11/17/2021 Trial Tr. 22:14-23:8; *see also* TE 6).

On January 6, 2021, Arizona Fleet engaged Southern Arizona Repossession Services ("Southern Arizona") to repossess the Vehicle.[4] (TE D at ¶ 3; DE 56 at §§ I.4 & II;). While Southern Arizona was repossessing the Vehicle, over the objections of the Debtor and his wife, the Debtor called Mortensen Law to inform them of the issue. (11/17/2021 Trial Tr. 23:15-25:6; TE 3 at 1). Ms. Flynn then promptly contacted Arizona Fleet and informed Ms. Martinez that the Debtor was a client of Mortensen Law and a debtor in an active bankruptcy case. (TE 3 at 1). Ms. Flynn told Ms. Martinez that Arizona Fleet was in violation of the automatic stay and needed to remedy the stay violation by immediately returning the Vehicle to the Debtor. (TE 3 at 1). Ms. Martinez indicated to Ms. Flynn that Arizona Fleet had not received notice of the bankruptcy filing. (TE 3 at 1).

Ms. Flynn informed Mr. Mortensen of the situation and was directed by Mr. Mortensen to contact Arizona Fleet again to obtain the contact information for Arizona Fleet's attorney. (TE 3 at 2).

Ms. Flynn called Ms. Martinez a second time and was transferred to one of the Bishops.[5] (TE 3 at 2). Ms. Flynn informed the Mr. Bishop to whom she spoke that the Debtor was a Mortensen Law client in an active bankruptcy case, and that Arizona Fleet was in violation of the stay. (TE 3 at 2). Mr. Bishop stated that he had not received notice of the bankruptcy filing, refused to provide attorney contact information for Arizona Fleet, and refused to return the Vehicle. (TE 3 at 2).

Later that day, Mr. Mortensen called Arizona Fleet and spoke with Mr. Ronald V. Bishop. (TE 4; TE D at ¶ 8; 11/17/2021 Trial Tr. 75:6-11). During that conversation, Mr. Mortensen informed Mr. Ronald V. Bishop of the bankruptcy filing and of the need to return the Vehicle to the Debtor. (TE 4). Mr. Ronald V. Bishop testified that he was skeptical that Mr. Mortensen was

---

[4] There is no dispute that the Debtor was in default under the terms of the installment contract for failure to make payments at the time the Vehicle was repossessed. (TE D at ¶ 3; 11/17/2021 Trial Tr. 33:10-12).
[5] The parties are unclear which Mr. Bishop. (*See* 11/17/2021 Trial Tr. 19:12-17, 20:1-5).

an attorney, citing past experiences with people falsely purporting to be attorneys, and what Mr. Ronald V. Bishop believed to be unprofessional conduct by Mr. Mortensen. (TE D at ¶¶ 8, 10). Mr. Ronald V. Bishop testified that during this phone conversation, he told Mr. Mortensen that Arizona Fleet would return the Vehicle if Mr. Mortensen sent him anything with his law firm's letterhead. (11/17/2021 Trial Tr. 76:8-10).

On January 7, 2021, the day after the repossession and the three phone calls from Mortensen Law to Arizona Fleet, Mr. Mortensen sent an email to Mr. Ronald L. Bishop and Ms. Martinez, in which Mr. Mortensen again reiterated that he was representing the Debtor in a bankruptcy proceeding. (TE 5). Mr. Mortensen asked that Arizona Fleet's attorney contact him, or that Arizona Fleet's attorney's contact information be provided to him. (TE 5). Mortensen Law's signature block is affixed to the end of the email. (TE 5). Mr. Mortensen received no response to this email and the Vehicle was not otherwise returned to the Debtor. (TE 4).

Approximately one week after the Vehicle was repossessed, the Debtor testified that he received a notice of sale from Arizona Fleet pertaining to the Vehicle, which testimony was not controverted. (11/17/2021 Trial Tr. 56:1-9, 56:22-4). Given this notice, the Debtor was led to believe that the Vehicle was going to be sold and that he would not be able to recover it. (*See* 11/17/2021 Trial Tr. 56:22-57:4). Around this time, the Debtor authorized Mr. Mortensen to pursue a motion for sanctions against Arizona Fleet on his behalf. (11/17/2021 Trial Tr. 29:6-13, 36:15-37:18, 40:24-41:6, 62:6-25).

On January 13, 2021, Mr. Mortensen sent a letter to Arizona Fleet, to the attention of a Ronald Bishop, via priority mail and email, on Mortensen Law stationary, which letter summarized the communications between Mortensen Law and Arizona Fleet, and which letter again reiterated the Debtor's position that Arizona Fleet had violated and was continuing to violate the stay by repossessing and maintaining possession of the Vehicle. (TE 6). The letter demanded that the Vehicle be returned within three days and warned that a motion for sanctions would be filed if Arizona Fleet failed to comply with this demand. (TE 6). The letter includes contact information for Mortensen Law and the Clerk's Office. (TE 6). Arizona Fleet did not deny receipt of this letter, nor did it respond to the letter, and the Vehicle was not returned to the

Debtor. (*See* 11/17/2021 Trial Tr. 81:12-23, 93:2-6).

As a result of the repossession, the Debtor and his wife were left without a reliable mode of transportation.[6] (11/17/2021 Trial Tr. 26:23-27:15). The Debtor testified that from time to time, he had access to a work vehicle, but such vehicle was not available for personal use. (11/17/2021 Trial Tr. 27:4-5). After the Vehicle was repossessed, the Debtor and his wife were reliant upon family and shuttle services for transportation. (11/17/2021 Trial Tr. 27:7-11).

On January 15, 2021, given the Debtor's need for transportation for himself and his wife, the Debtor purchased a replacement vehicle. (11/17/2021 Trial Tr. 27:12-19, 28:3-9, 32:19-25). In order to purchase the replacement vehicle, the Debtor was required to make a $1,500 down payment. (11/17/2021 Trial Tr. 28:10-12, 31:6-18; TE 9).

On January 22, 2021, Mr. Mortensen filed the Motion for Sanctions on behalf of the Debtor, in which motion the Debtor accuses Arizona Fleet of knowingly, intentionally, and willfully violating the automatic stay imposed by §§ 362(a)(1), (a)(3), and (a)(6)[7] by repossessing and continuing to hold the Vehicle. The Motion for Sanctions asks the Court to order turnover of the Vehicle and impose sanctions against all appropriate parties pursuant to § 362(k). The Motion for Sanctions was mailed and faxed to Arizona Fleet, but no response was timely filed. (DE 24 at 6; *see also* 11/17/2021 Trial Tr. 92:22-93:6).

On March 2, 2021, the Court held an initial hearing on the Motion for Sanctions. At the initial hearing, Mr. Ronald L. Bishop appeared on behalf of Arizona Fleet, without counsel, orally argued against the Motion for Sanctions, and represented to the Court that Arizona Fleet remained in possession of the Vehicle and would turn over the Vehicle to the Debtor if ordered to do so. (3/2/2021 Hearing Tr. 2:11-12, 6:15-20; 11/17/2021 Trial Tr. 83:4-6). Mr. Mortensen reported that he was unsure whether the Debtor was still seeking turnover of the Vehicle given that it was unknown to Mr. Mortensen whether the Debtor had obtained a replacement vehicle in

---

[6] It is undisputed that the Vehicle was damaged prior to the repossession. (11/17/2021 Trial Tr. 26:6-22; TE D at ¶ 5). The Bishops testified that the Vehicle was not in a safe, drivable condition when it was repossessed. (TE D at ¶ 5; 11/17/2021 Trial Tr. 88:21-22). The Debtor, however, testified that the Vehicle remained his mode of transportation until the repossession. (*See* 11/17/2021 Trial Tr. 26:23-27:15, 32:12-15).

[7] Unless otherwise indicated, statutory references are to the Bankruptcy Code, Title 11 of the United States Code.

the two months that had elapsed since the repossession. (3/2/2021 Hearing Tr. 6:23-7:10).

This Court informed Mr. Ronald L. Bishop that a corporate entity is required to be represented by counsel, such that counsel would need to appear at the next hearing. On March 23, 2021, Mark Chadwick of Munger Chadwick PLC filed a notice of appearance on behalf of Arizona Fleet. (DE 31).

After settlement negotiations failed, the Court set a briefing schedule, pursuant to which the Response and Reply were filed. (*See* DE 45; DE 46).

In the Response, Arizona Fleet argues that: (1) it did not willfully violate the stay because it lacked sufficient notice of the bankruptcy case; and (2) the Debtor suffered no actual damages within the meaning of § 362(k)(1). (DE 45).

In the Reply, the Debtor maintains his position that Arizona Fleet willfully violated the stay, and he reiterates his request that the Court award him sanctions. (DE 46).

At the conclusion of the trial, Mr. Mortensen asked the Court to award the Debtor $1,500 in actual damages, representing the amount of the down payment for the Debtor's replacement vehicle, as well as all attorneys' fees incurred with respect to this matter, and any other relief the Court deems reasonable. (11/17/2021 Trial Tr. 99:21-100:5; DE 84 at 7).

**III.  Issues**

There is no dispute that the Vehicle was repossessed in violation of the stay. (*See* DE 45; DE 56 at § IV). The issues before the Court are: (1) whether Arizona Fleet's stay violation was willful within the meaning of § 362(k); and (2) if so, what, if any, damages the Court must and/or should award.

**IV.  Legal Analysis and Conclusions of Law**

Relevant to the matter before the Court, § 362(a) operates as a stay, applicable to all entities, of –

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case . . . , or to

> recover a claim against the debtor that arose before the commencement of the case . . . ;
>
> . . . ;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> . . . ; [and]
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . . .

Section 362(k)(1), which is intended to deter violations of the stay and provide redress when the stay is violated, provides that "an individual injured by any willful violation of a stay provided by [§ 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[8] The debtor has the burden of establishing each element of a § 362(k) claim. *In re Fernandez*, 227 B.R. 174, 180 (B.A.P. 9th Cir. 1998), *aff'd,* 208 F.3d 220 (9th Cir. 2000); *In re Silva*, No. 6:19-BK-10026-SY, 2021 WL 2814699, at *5 (B.A.P. 9th Cir. July 6, 2021).

### A. Whether There Was a Willful Stay Violation

A party has willfully violated the stay if: (1) the party knew of the stay; and (2) the party's actions in violation of the stay were intentional. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002). Arizona Fleet argues that the Debtor has failed to establish either of these elements.

"[A] party with knowledge of bankruptcy proceedings is charged with knowledge of the automatic stay." *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003). There is no requirement that a creditor be given an official Court-issued notice or form regarding the bankruptcy case. *See In re Moon*, No. 13-BK-12466-MKN, 2021 WL 62629, at *8 (B.A.P. 9th Cir. Jan. 7, 2021), *appeal dismissed,* No. 21-60006, 2021 WL 3509163 (9th Cir. Apr. 19, 2021) ("Notice of a bankruptcy filing need not be formal for knowledge of the automatic stay and for the purposes of willful stay violations."). "Informal notice suffices[,]" and once a creditor is given actual notice of a bankruptcy filing, that creditor "ha[s] a duty to ascertain the correctness of the information, not

---

[8] Section 362(k)(2) is not implicated in this case.

disregard it." *Id.*

Further, "[a] 'willful violation' does not require specific intent to violate the automatic stay." *In re Roman*, 283 B.R. 1, 8 (B.A.P. 9th Cir. 2002); *accord In re Campion*, 294 B.R. 313, 316 (B.A.P. 9th Cir. 2003). The intent inquiry asks only whether the party charged with the stay violation intended its actions. *See In re Campion*, 294 B.R. at 316. "[A] good faith belief that the stay is not being violated is not relevant to whether the act was 'willful' . . . ." *Id.* (quoting in part *Johnston Envtl. Corp. v. Knight (In re Goodman),* 991 F.2d 613, 618 (9th Cir. 1993)) (internal quotations omitted).

The law imposes an affirmative duty on creditors to remedy stay violations by restoring the status quo, and also to establish administrative safeguards to prevent stay violations from occurring in the first instance. *In re Dyer*, 322 F.3d at 1192; *In re Roman*, 283 B.R. at 12. For example, "[w]hen a creditor lacks notice of a debtor's bankruptcy, acts in violation of the stay may be inadvertent; however, such acts become willful stay violations when the creditor learns of the debtor's bankruptcy but fails to take reasonable steps to remedy the violation." *In re Calloway*, No. 08-18561SSC, 2009 WL 1564207, at *4 (Bankr. D. Ariz. May 26, 2009) (citing *Abrams v. Southwest Leasing & Rental, Inc. (In re Abrams),* 127 B.R. 239, 241-44 (B.A.P. 9th Cir. 1991)). In the context of a wrongful repossession, it is the creditor's responsibility to return the vehicle to the debtor, or to take other appropriate action to correct the situation. *Id*.

In this case, the Notice Setting Claims Bar Date, which notice contains the Debtor's name, address, bankruptcy case number, and contains the contact information for the Clerk's Office, was sent by the BNC to Arizona Fleet's correct mailing address more than two weeks before Arizona Fleet directed the repossession of the Vehicle. That an employee of Arizona Fleet may have disregarded or mishandled the Notice Setting Claims Bar Date does not immunize Arizona Fleet from liability under § 362(k)(1). "A creditor's 'internal disorder does not excuse it from violating the automatic stay[,]'" and employers bear the consequences when their employees fail to perform their tasks accurately or appropriately. *In re Campion*, 294 B.R. at 317 (quoting *Eskanos & Adler*, 309 F.3d at 1215). Given that the Notice Setting Claims Bar Date was sent to Arizona Fleet, Arizona Fleet is charged with having knowledge of the bankruptcy stay prior to

directing the repossession of the Vehicle in violation of the stay.

Even if the repossession had been inadvertent, it is undisputed that Mr. Mortensen and his staff communicated directly with an Arizona Fleet employee and with at least one of the Bishops on at least three separate occasions on the date of the repossession to inform Arizona Fleet of the bankruptcy case and the stay violation. It is also undisputed that Mr. Mortensen sent correspondence to Arizona Fleet via both email and mail, receipt of which was not denied, and which correspondence was not returned as undeliverable, or responded to. Rather than comply with its affirmative duty to remedy its stay violation and restore the status quo, Arizona Fleet chose to remain non-responsive, took no steps to confirm or inquire as to the pendency of this bankruptcy case, filed nothing with this Court requesting any form of stay relief, sent the Debtor a notice that it intended to sell the Vehicle, wrongfully continued to maintain possession of the Vehicle, and, without merit, continues to maintain that it was incumbent upon the Debtor to retrieve his wrongfully repossessed Vehicle. In sum, Arizona Fleet was given more than adequate notice of this case and of the automatic stay, yet failed to acknowledge or comply with applicable law.

Further, although Mr. Ronald V. Bishop maintained during trial that neither he nor anyone acting on behalf of Arizona Fleet intentionally violated the stay, either before or after the Vehicle was repossessed, a stay violation can be willful within the meaning of § 362(k) even if such violation was not intentional. Section 362(k)(1) requires only that a creditor intend its actions, and there is no dispute that Arizona Fleet intended to direct and complete the repossession of the Vehicle and maintain possession thereafter. Whether a creditor believes its actions are justified is irrelevant. *In re Cini*, 492 B.R. 291, 317 (Bankr. D. Mont. 2013).

Based upon the foregoing, it is the determination of this Court that by its actions, Arizona Fleet willfully violated the automatic stay provided by § 362.

**B.      Damages**

When a debtor is injured by a willful stay violation, § 362(k) "makes an award of actual damages and attorney's fees mandatory, and grants bankruptcy courts the discretion to impose punitive damages in appropriate cases." *In re Schwartz-Tallard*, 803 F.3d 1095, 1099 (9th Cir.

2015). "While the moving party must show 'injury,' and the court may consider the severity of the violation when deciding the amount of sanctions, there is no category of violations so minor that it automatically negates the mandatory language of § 362(k)." *In re Koeberer*, 632 B.R. 680, 690 (B.A.P. 9th Cir. 2021).

### 1. Actual Damages

The Debtor argues that the $1,500 down payment he was required to tender to acquire a replacement vehicle represents compensable actual damages. Arizona Fleet, however, contends that there was no economic loss to the Debtor as a result of the stay violation, and argues that the facts of this case are analogous to those in *McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165 (B.A.P. 9th Cir. 1995).

As an initial note, the *McHenry* case is materially distinguishable from the matter before the Court. In *McHenry*, the debtors communicated an intent to surrender the vehicle to the lender, the repossession of which was the subject of the stay violation action. 179 B.R. at 166. The *McHenry* debtors even went so far as to make arrangements for the lender to retrieve the vehicle. *Id.* In this case, the Debtor expressly stated his intent to retain the Vehicle, actively challenged the repossession of the Vehicle, and attempted numerous times, through counsel, to have the Vehicle returned after it was wrongfully repossessed.

For purposes of § 362(k)(1), "'[a]ctual damages' is not restricted to a certain dollar amount, but is simply a money judgment in compensation for a legally recognized injury or harm." *In re Roman*, 283 B.R. 1, 9 (B.A.P. 9th Cir. 2002) (affirming an award of $5 in actual damages, representing a travel expense incurred by a debtor to drive to her attorney's office to defend against a stay violation). Readily ascertainable actual damages commonly include, among other things, the cost of a replacement vehicle. *In re Bradford*, No. 18-25405-B-7, 2018 WL 6422858, at *9 (Bankr. E.D. Cal. Dec. 4, 2018); *see also In re Adams*, 516 B.R. 361, 370 (Bankr. S.D. Miss. 2014) (awarding debtors actual damages for the cost of renting a replacement vehicle); *In re Dean*, 490 B.R. 662, 668 (Bankr. M.D. Penn. 2013) (recognizing that the actual cost of obtaining a replacement vehicle would be compensable as actual damages under § 362(k)).

In this case, the Debtor established that he paid $1,500 as a down payment to obtain a

replacement vehicle as a result of Arizona Fleet's willful stay violation. This expense is attributable solely to Arizona Fleet's wrongful repossession and refusal to return the Vehicle. That there may have been no equity in the Vehicle at the time of its repossession and/or that there may be equity in the Debtor's replacement vehicle is irrelevant to this Court's analysis. The Debtor was harmed by Arizona Fleet's seizure of his means of transportation, and the down payment the Debtor incurred to redress this harm represents actual damages to which he is entitled.[9]

Based upon the foregoing, the Court finds that the Debtor is entitled to an award for actual damages in the amount of $1,500, representing the amount of the down payment made by the Debtor to acquire a replacement vehicle.

### 2. Attorneys' Fees

Mortensen Law has represented the Debtor in this case since its inception. Because Mr. Mortensen was called as a witness at the evidentiary hearing, the Debtor sought and was authorized by the Court to employ Daniel Rylander ("Mr. Rylander") of Daniel J Rylander PC ("Rylander PC") as co-counsel/special counsel for purposes of litigating this matter.[10] (DE 53; DE 55). The Debtor requests attorneys' fees in the amount of $12,903 for services rendered by Mortensen Law to seek redress for Arizona Fleet's stay violation, and attorneys' fees in the amount of $1,200 for services rendered by Rylander PC in preparation for and during the evidentiary hearing. (DE 65; DE 66).

Mortensen Law and Rylander PC each billed at a rate of $400 per hour for attorney work, and Mortensen Law billed at a rate of $100 per hour for paralegal work. (DE 65 & DE 66). The attorneys' fees request is supported by affidavits executed by Mr. Mortensen and Mr. Rylander, and itemized time sheets attached thereto. (DE 65; DE 66).

Arizona Fleet has objected to any award of attorneys' fees. Arizona Fleet argues that:

---

[9] Given that the Debtor also relied on shuttle services and other alternative means of transportation as a result of the repossession, it is likely that his actual damages well exceed the $1,500 he is seeking.

[10] Specifically, the Debtor employed Mr. Rylander to address concerns related to Arizona Rule of Professional Conduct 3.7, which provides in part that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client."

(1) the only potentially necessary legal efforts taken were the phone calls made on the day of the repossession, such that no other fees are recoverable; (2) in any event, Ninth Circuit case law does not allow for the recovery of attorneys' fees for the pursuit of actual damages, such that none of the fees incurred after Arizona Fleet offered to allow the Debtor to retrieve the Vehicle at the initial hearing on the Motion for Sanctions are recoverable; (3) the Debtor effectively abandoned the Vehicle by failing to take affirmative steps to retrieve it after the initial hearing, such that attorneys' fees pertaining to this matter are unwarranted; (4) the Debtor has not paid any attorneys' fees in connection with this litigation, such that he is not entitled to recover any such fees; and (5) an inordinate amount of time was spent on certain tasks, rendering the fees associate therewith unreasonable and therefore unrecoverable.

With respect to the necessity of this litigation, Arizona Fleet argues that the Debtor could have avoided all legal action after the phone calls made by Mortensen Law to Arizona Fleet on the date of the repossession by simply providing written proof of the bankruptcy case to Arizona Fleet. However, the Debtor, through counsel, did exactly that. Following the phone calls to Arizona Fleet, Mr. Mortensen sent Arizona Fleet an email and a letter regarding this bankruptcy case in an attempt to resolve this matter without Court involvement. Moreover, it is undisputed that the official Notice of Setting Claims Bar Date was sent to Arizona Fleet more than two weeks prior to the repossession. Thus, the Court finds that additional legal action on the part of the Debtor was warranted and necessary.[11]

With respect to the scope of the attorneys' fees that are recoverable under § 362(k)(1), Arizona Fleet's argument that fees incurred to pursue damages awards fall outside the scope of § 362(k)(1) relies on case law that has been overturned.[12] Ninth Circuit case law is clear: this Court is required to award all attorneys' fees reasonably incurred to end a willful stay violation <u>and</u> to prosecute an action for damages under § 362(k). *In re Schwartz-Tallard*, 803 F.3d at 1101

---

[11] Further, although the parties engaged in settlement discussions, there is no evidence that Arizona Fleet agreed to settle this matter for the amount of the Debtor's actual damages plus attorneys' fees, which fees the Debtor would otherwise be obligated to pay. (*See* TE I; TE J; *see also* 11/17/2021 Trial Tr. 55:16-24).

[12] The portion of *Sternberg v. Johnston*, 582 F.3d 1114 (9th Cir. 2009) that Arizona Fleet cites for the proposition that attorneys' fees are not awardable under § 362(k)(1) for actions to recover actual damages was overruled by *In re Schwartz-Tallard*, 803 F.3d 1095 (9th Cir. 2015).

(emphasis added).[13]

With respect to the impact of the Debtor's purported abandonment of the Vehicle on an attorneys' fee award, the Debtor has no obligation to take affirmative steps to remedy Arizona Fleet's stay violation, and there is no evidence that the Debtor has abandoned the Vehicle.[14]

With respect to whether a debtor's payment of or liability for attorneys' fees is material to an award of attorneys' fees under § 362(k)(1), "attorney's fees and costs are recoverable under § 362(k)(1) even if the debtor is not personally liable for them." *In re Moon*, No. 13-BK-12466-MKN, 2021 WL 62630, at *3 (B.A.P. 9th Cir. Jan. 7, 2021), *appeal dismissed sub nom. In re Moon*, No. 21-60010, 2021 WL 3508616 (9th Cir. Apr. 19, 2021). Thus, it is irrelevant whether the Debtor has paid or is obligated for any attorneys' fees pertaining to this matter.

With respect to reasonableness, the Ninth Circuit B.A.P. has "endorse[d] the use of the principals used in § 330 as a guide for awarding attorneys' fees under § 362 . . . [,]" *In re Roman*, 283 B.R. at 11, which principals allow "reasonable compensation for actual, necessary services . . . ." 11 U.S.C. § 330(a)(1)(A).

In this case, the Court has reviewed each of the attorney billing entries, and it is the determination of this Court that given the nature of these proceedings and the qualifications of counsel, the time spent by Mortensen Law and Rylander PC and the rates charged for such services are reasonable and recoverable under § 362(k)(1). The record reflects that Mortensen Law informally attempted to resolve the stay violation numerous times before filing and pursuing the Motion for Sanctions on the Debtor's behalf, and the Court finds that given the circumstances, none of the requested fees are unnecessary or excessive. Ultimately, the attorneys' fees portion of this damages award is largely a self-inflicted result of Arizona Fleet's failure to promptly and sufficiently remedy its stay violation.

Based upon the foregoing, it is the determination of this Court that the requested attorneys' fees were necessarily incurred, are reasonable, and are recoverable under § 362(k)(1).

---

[13] The Court further notes that an offer to allow a debtor to retrieve a wrongfully repossessed vehicle does not per se "end" a stay violation as a matter of law. As of the date of the evidentiary hearing, the Vehicle remained in Arizona Fleet's possession.

[14] *See* 11/17/2021 Trial Tr. 45:9-13; DE 84 at 7.

### 3. Punitive Damages

Pursuant to § 362(k)(1), the Court may award punitive damages "in appropriate circumstances[.]" Under Ninth Circuit case law, "[a]n award of punitive damages requires 'some showing of reckless or callous disregard for the law or rights of others.'" *In re Snowden*, 769 F.3d 651, 657 (9th Cir. 2014) (quoting *In re Bloom*, 875 F.2d 224, 228 (9th Cir. 1989)). "In awarding punitive damages, a court should consider: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damage award and the civil penalties authorized or imposed in comparable cases." *In re Moon*, 2021 WL 62629, at *6. "Generally speaking, there are two underlying purposes for punitive damage awards: to punish outrageous conduct and to deter future similar conduct." *Id.* at *7 (quoting *Orian v. Asaf (In re Orian)*, No. CC-18-1092-SFL, 2018 WL 6187784, at *13 (B.A.P. 9th Cir. Nov. 27, 2018)).

In this case, although punitive damages have not expressly been requested, the Court finds that by its actions, Arizona Fleet has shown a reckless and callous disregard for the Debtor's rights pursuant to the Bankruptcy Code, and to the Bankruptcy Code itself. The testimony and undisputed facts reflect that Arizona Fleet, which operates as a lender in the automobile industry and is regularly exposed to bankruptcy cases, actively and persistently chose to ignore notice of a bankruptcy filing, has severely deficient policies in place with respect to employee training regarding bankruptcy matters, and affirmatively chose not to pursue stay relief to exercise its state law rights, thus exhibiting egregious behavior in this case.

Based upon the foregoing, and given the egregious nature of Arizona Fleet's conduct, the Court, in order to deter future stay violations, deems sanctions in the amount of $2,500 necessary and appropriate.

///

///

## V. Conclusion

As set forth above, Arizona Fleet willfully violated the automatic stay, and as a result, it is the determination of this Court that the Debtor is entitled to actual damages and reasonable attorneys' fees incurred as a result. Further, given Arizona Fleet's egregious conduct and given § 362(k)(1)'s goal of deterrence, the Court finds that punitive damages are warranted.

A judgment will issue contemporaneously with this Memorandum Decision.

**DATED AND SIGNED ABOVE.**